EX PARTE SPENCER P. ADAMS.

No. 15005.    Delivered December 23, 1931.

The opinion states the case.

*Hughes & Monroe,* of Dallas, for appellant.

*William McCraw,* Criminal District Attorney, of Dallas, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—Under an indictment for murder, and having been denied bail by the district court in a hearing upon a writ of habeas corpus, an appeal is prosecuted to this court.

A detailed statement of the evidence will not be undertaken in this appeal. In substance, the following appears: The appellant, a practicing lawyer, had been employed by the deceased to perform some legal services. A fee of $5 was charged and received by Adams from Lambert, the deceased. Lambert was dissatisfied with the services and demanded a refund of the fee which he had paid. Adams declined to accede to the demand. Lambert, who was charged with an offense, was in jail. While there, according to some of the testimony adduced, he displayed great animosity toward Adams and made a threat to do him violence. He stated, among other things, that he would take his pistol and get the money which Adams owed him. While Adams was in jail upon some business, Lambert accosted him and said, among other things, "If you don't pay me, when I get out, I will kill you. I will get my five dollars or kill you." Lambert at the same time abused Adams, calling him a vile name. Testimony of threats of this nature was given by several witnesses. On the day preceding the tragedy, Lambert called Adams over the telephone at his home. A witness heard Adams say: "You are going to kill me, are you? Listen, I am due at my office between one-thirty and two. * * * If you are in a hurry, you come out to my house (giving directions how to reach it)."

Adams then told the witness that he had received a $5 bill from Albert Lambert, had worked several days for him on a matter and that Lambert was demanding a return of the $5 and threatening the life of Adams. The appellant went to his office on the following morning, and later in the day he found in his office a note from Lambert which read thus: "Mr. Adams, I live at 1523 Second Avenue. You bring my money out there tonight or I am coming back after you."

Adams asked the witness at his home to bring his pistol to the office which the witness did.

From the state's testimony it appears that in the afternoon Lambert got off the elevator, which was a short distance from Adams' desk. Lambert started into Adams' office and was fired upon. Lambert fled down the hall and Adams pursued him, continuing to fire until five shots were discharged. Upon being asked by a bystander what he had done, Lambert said, "Not anything".

An eye-witness for Adams testified that as Lambert got off the elevator, he had what the witness described as a "determined look on his

face". He rushed quickly into Adams' office and while standing inside, he addressed Adams. As the latter started to arise to his feet, Lambert made a "fight" at him. Adams reached for his gun which was in his desk. They grappled for the gun, and Lambert stepped back in the hall. When the first shot was fired, Lambert was about a foot outside of the door and three or four feet from Adams' desk. Adams was in his office at the time. The witness did not see Lambert run after the shooting began.

The evidence pointedly raises the issue of self-defense based upon apparent danger and upon threats. The circumstances detailed by the witnesses are not deemed such as would warrant the court in denying the appellant the right to bail which is guaranteed him by the Constitution except in capital cases where the "proof is evident", which is construed by the courts to mean such as would probably impel the jury in the discharge of its duty to assess the death penalty. See Const., art. 1, sec. 11; Ex parte Powell, 107 Texas Crim. Rep., 648, 298 S. W., 575; Ex parte Tindall, 111 Texas Crim. Rep., 444; 15 S. W. (2d) 24; Ex parte Alford, 97 Texas Crim. Rep., 410, 261 S. W., 104, and cases therein cited.

The judgment of the trial court is reversed and the relator granted bail in the sum of $5,000.

*Reversed and relator granted bail.*