## EX PARTE C. B. YARBROUGH.

No. 15832.   Delivered January 25, 1933.
Reported in 56 S. W. (2d) 650.

The opinion states the case.

*Wm. A. Shofner* and *De Wit Bowmer,* both of Temple, for appellant.

*Lloyd W Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Appellant was indicted for the murder of Doris Yarbrough.   By habeas corpus proceeding bail was sought.   From an order of the district court denying bail, this appeal is prosecuted.

About 4:30 o'clock in the afternoon of September 7, 1932, deceased was so severely burned that she died soon thereafter.

Deceased was an adopted daughter of appellant.   It was the state's theory that appellant had purposely caused the burning of deceased.   In resisting bail, the state relied on proven statements made by appellant and deceased regarding the origin of the fire.   All of the evidence was put in the record by the state. The explanation made by appellant to witnesses was substantially as follows:   He was working in the garage cleaning off

a car preparatory to painting it. Deceased was helping him. He had been using a blowtorch to burn the grease off of the wheels and other places where it had collected. He sat the torch on the running board of the car, and placed a board from one fender to a drum or barrel, and was on this board preparing to wash the top of the car with gasoline which was in a bucket. When he tried to move the bucket, which was on top of the car, the bail came out and the bucket turned over, spilling the gasoline over deceased and on the floor. The gasoline ignited from the torch and set fire to deceased. The latter's version of the matter given to the sheriff at the hospital was that she was helping her "daddy" with the car, and that they had some gasoline and a blowtorch, and that the gasoline exploded. One witness who reached the scene shortly after the fire started, and after the clothing of deceased were burning, said that just as witness reached the garage appellant threw the contents of a bucket of gasoline on deceased, which flashed or exploded as it struck her, and that appellant said, "My God, I threw the wrong bucket on her," and immediately picked up another bucket containing water and dashed it on her, and got some more water from a hydrant and poured it on her head. Deceased was taken into a neighbor's house. Some one asked her how she got burned and she replied that "the gas turned over on her"; she called for appellant and said, "Oh, Daddy, what made you do it?" The significance of this statement as an indirect charge against appellant is lessened by his immediate explanation that he had thrown the contents of the wrong bucket on deceased. The state showed that appellant carried considerable insurance in his favor on the life of deceased. It was further shown that deceased had been whipped by appellant and that he complained that she was not obedient and said he would have to get rid of her on account of his wife, and at one time began proceedings to try to have her placed in the training school for girls.

The immediate facts throwing any light on the beginning of the fire raise an issue of accidental death. The effort of the state to break down the evidence to that effect, which evidence the state had itself put in the record, does not in our opinion warrant a denial of bail in view of the constitutional guarantee of the right to bail except in capital cases where the "proof is evident." See Constitution, art. 1, sec. 11. Adams v. State, 119 Texas Crim. Rep., 135, 44 S. W. (2d) 713, and authorities therein cited.

The judgment denying bail is reversed and bail granted in the sum of $5,000.

*Judgment reversed and bail granted.*