## TOM CUDD v. THE STATE.

### *No. 3071.   Decided October 30.*

1. **Pleading—Indictment.**—It is a well settled rule of criminal pleading that allegations not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant and without detriment to the indictment, are treated as mere surplusage and may be entirely disregarded.  The indictment in this case charges as follows:  "Tom Cudd, on or about August 26, 1888, and anterior to the presentment of this indictment, in the county and State aforesaid, did then and there unlawfully and with malice aforethought kill and murder Campbell Taylor by cutting and stabbing him, the said Campbell Taylor, with a knife, *inflicting upon him, the said Campbell Taylor, one mortal wound, from which mortal wound he, said Campbell Taylor, died*," etc.  *Held*, that eliminating the words italicised, which under this rule are mere surplusage, the indictment conforms to No. 388 of Willson's Criminal Forms, and is sufficient.

2. **Same—Variance.**—While it is essential that the indictment allege the offense to have been committed at a date anterior to its filing, and within the period of limitation, it is not essential that the proof shall show the offense to have been committed upon the particular day alleged.  It will suffice if it shows that it was committed before the indictment was presented and before limitation intervened.

3. **Same.**—Allegation in an indictment for murder that the accused *killed* the deceased on a certain day implies that the deceased *died* on that day.  And under the rule above announced, it is not an objection tenable upon the ground of variance that the court admitted proof that although the mortal wound was inflicted on the day alleged in the indictment, the deceased did not in fact die on that day, but lingered and languished for several days thereafter before he died.

4. **Same—Manslaughter.**—See the statement of the case for evidence *held* sufficient to support a conviction for manslaughter.

APPEAL from the District Court of De Witt.    Tried below before Hon. H. C. Pleasants.

Under an indictment charging him with the murder of Campbell Taylor, the appellant was convicted of manslaughter, his penalty being affixed at a term of four years in the penitentiary.

Ed. Taylor was the first material witness for the State.    He testified, in substance, that he was present and witnessed the difficulty between defendant and Campbell Taylor, in which the latter received the fatal cut. It occurred at a dance at the house of Hugh Means, on or about August 26, 1888.    Deceased, who was the witness's brother, was playing the fiddle for the dancers on that night.    Breaking some of the fiddle strings, the deceased opened his pocket knife and proceeded to fix them, when defendant, speaking to Walter Yarbrough, who was acting as master of

ceremonies and collector of money, said, "Give me back my money and I will go home. I see there is going to be no fiddling here to-night." Yarbrough asked if he should return the money to defendant. Deceased replied, "Give it back to him, we have plenty without it." To this remark, addressed by deceased to Yarbrough, defendant replied, "I want only what is my own, and if you don't like it, it will take the less of it to do you." At this point Walter Mathis appealed to the parties to "hush up." Deceased remarked to Mathis that he was "not afraid of defendant, nor of any one who wore the Cudd name." Defendant said to deceased, "Come outside and we will settle it." Deceased placed his fiddle in the lap of Miss Adams, who was sitting at his side, remarked, "Let me accommodate the gentleman," and got up. His knife and fiddle bow dropped from his lap to the floor. Without stopping to pick them up, the deceased followed the defendant. As deceased started to follow defendant, A. P. Cudd, the defendant's brother, seized deceased by the arm. Witness seized A. P. Cudd and made him release the deceased. Just before he reached the door, and while deceased was advancing upon him, the defendant turned suddenly and struck at deceased. Deceased turned around and said, "Boys, he has cut me." Examination of the deceased's person disclosed a knife cut on the left side about three inches below the nipple. A doctor was summoned, who dressed the wound, and on the morrow the deceased was removed to the house of his mother, where he lingered in great agony for eight days, and then died from the effects of the wound inflicted by the defendant in the manner stated.

On his cross-examination this witness stated that the defendant did not address deceased when he demanded the return of his money, nor did Yarbrough address deceased when he asked the crowd if he should return the money paid by defendant. Defendant could and should have seen the knife drop from deceased's lap, but witness could not testify that he did see it. Witness did not see the deceased strike or strike at the defendant.

Walter Mathis testified for the State that he was standing near deceased when defendant demanded of Yarbrough the return of his money. Deceased told defendant to take his money, when witness, in a joking manner, told deceased he, witness, would slap his face if he did not hush up. Deceased then said that he was not afraid of defendant, nor of any man who wore the Cudd name. Defendant said to deceased in reply, "If you don't like it, come outside." Deceased asked Miss Adams to hold his fiddle while he "accommodated the gentleman." He then got up, his knife falling from his lap to the floor, and started forward with his hands raised as if to seize defendant. The crowd then surged around the parties, and the witness did not see the fatal blow struck.

Mrs. Taylor, nee Miss Drucilla Adams, testified for the State that she

was seated near the deceased when the difficulty began, but when it became apparent that a collision between defendant and deceased was inevitable, she left the room and did not see the conclusion of the fight. Her account of the affair from its beginning until deceased got up to follow defendant out of the house was substantially the same as that of the preceding witnesses.

Sam Leaton testified for the State, in substance, that he was standing near Yarbrough when, defendant having demanded the return of his money, deceased told him to take it. Yarbrough handed the money to defendant, who received it in his left hand. As defendant remarked to deceased that he "was going to have it" (the money), he changed it to his right hand, put it in his pocket, and withdrew his hand with something in it. About that time deceased said that he was afraid of no man who wore the Cudd name. Defendant replied, "Let's have no difficulty in here, but come outside to settle it." Deceased jumped up from his seat, rushed at defendant, caught him by the collar, and struck him across the head with his right hand. Defendant got loose and continued his retreat towards the door, pursued by deceased. Deceased struck defendant again, when defendant turned and struck deceased with his right hand. Immediately after deceased struck the first blow the witness saw a knife in the defendant's right hand. Witness did not see a knife in deceased's hand when he got up from his seat and rushed upon defendant, but he heard something fall to the floor. After the cutting the deceased's knife was handed to the witness.

John Stephenson testified for the State, in substance, that he was on the opposite side of the room from the parties when the difficulty began. He observed the commotion it created, heard the talking but understood nothing that was said. As the witness saw it, the collision was precipitated by deceased striking the defendant with his fist. Defendant retreated eight or ten feet toward the door, followed by the deceased, who continued to strike or strike at him. About the time deceased overtook defendant he, defendant, struck deceased with his right hand, in which he held a knife. Witness apprehended trouble when he heard defendant and deceased talking to each other, as he knew of a "spat" between them about waltz music which occurred at a dance a few months before.

F. N. Smith was the next witness for the State. He testified, in substance, that a few weeks before the difficulty the defendant, in conversation with him, remarked that deceased had been persistently trying to run over him, and that the next time he tried it one or the other of them would have to take a whipping. Witness denied that he ever told the district attorney and Major Fly, or either of them, in the presence of others, that defendant told him that he, defendant, and deceased had had a row

about a waltz, and that the next time he caught deceased at a dance he would "do up" the deceased. The State closed.

A. P. Cudd, the brother of the defendant, testified in his behalf that he was present and saw all that occurred at the time of the fatal difficulty. Defendant remarked to Yarbrough that as he saw no prospect of getting to dance he would like to have his money returned and he would go home. Yarborough handed him the money, when deceased, who was sitting near, working with his fiddle strings, said to him: "Take your money and go to hell with it! Nobody wants it." Defendant replied that he wanted only what was his, and that if deceased did not like it, it would take less of it to do him. Deceased retorted that he was not afraid of defendant nor any d—d man who had the Cudd name. The defendant replied that the dance room was no place for a difficulty, and that they had better go outside. Deceased jumped up, rushed upon defendant, and struck him, knocking his hat off. Defendant continued to retreat, evidently trying to get out of the door. Witness did not see defendant cut deceased, and at no time saw a knife in defendant's hand. Deceased had an open knife in his hand when he first spoke to defendant. Witness did not see deceased's knife when he jumped from his seat and rushed at defendant, nor did he hear it drop on the floor. It was not true that witness seized deceased's arm when he jumped up and was in turn seized by Ed Taylor.

Walter Yarbrough testified for the defense substantially as did the witness A. P. Cudd as to what occurred up to the moment before the cutting, which he did not see. If deceased dropped his knife from his lap when he got up and rushed upon the defendant, the witness did not see or know it.

Several witnesses for the defense concurred in pronouncing the defendant's reputation for peace and quietude unexceptionable.

*Friend & Pleasants* and *Crain, Kleberg & Grimes*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, and *G. W. L. Fly*, for the State.

WHITE, PRESIDING JUDGE.—Defendant made a motion in arrest of judgment which attacked the sufficiency of the indictment, and claimed that it was wholly defective, in "that the said indictment fails to state when Campbell Taylor, with whose murder defendant is attempted to be charged, died."

The charge as set forth in the indictment is "that Tom Cudd, on or about the 26th day of August, one thousand eight hundred and eighty-eight, and anterior to the presentment of this indictment, in the county and State aforesaid, did then and there unlawfully and with malice aforethought kill and murder Campbell Taylor by cutting and stabbing him,

the said Campbell Taylor, with a knife, *inflicting upon him, the said Campbell Taylor, one mortal wound, from which said mortal wound he, the said Campbell Taylor, died;* against the peace and dignity of the State."

This motion in arrest having been overruled is assigned for error on this appeal, and the proposition based upon the assignment is that "it must appear affirmatively from the face of an indictment for murder that death ensued within a year and a day from the alleged infliction of the mortal wound, and an indictment which fails to allege the date of the death of the deceased, either in exact words or by necessary implication, as that he ' then and there ' instantly died, is fatally defective."

In copying the charging part of the indictment it will be seen that we have italicised the words "inflicting upon him, the said Campbell Taylor, one mortal wound, from which said mortal wound he, the said Campbell Taylor, died." Now, if the italicised words be stricken out and eliminated from the indictment, there can be no doubt of its sufficiency under the well established rules and forms which have been recognized in this State. The well settled rule is that allegations not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment, are treated as mere surplusage, and may be entirely disregarded. Mayo v. The State, 7 Texas Ct. App., 342; Holden v. The State, 18 Texas Ct. App., 91; McConnell v. The State, 22 Texas Ct. App., 354.

Eliminating these words we have an indictment complying in every essential with No. 388, the general form for murder found in Willson's Criminal Forms, p. 173, which form since its publication has repeatedly been held sufficient by this court. Lucas v. The State, 19 Texas Ct. App., 79; Walker v. The State, Id., 176; Stephens v. The State, 20 Texas Ct. App., 255; Banks v. The State, 24 Texas Ct. App., 559: Rather v. The State, 25 Texas Ct. App., 623. See also Willson's Crim. Stats., sec. 1980, form No. 2.

In Strickland's case, 19 Texas Court of Appeals, 518, Judge Hurt says: "At common law it was essentially necessary to set forth particularly the manner of the killing and the means by which it was effected. This is rendered unnecessary by the Act of March 26, 1881. Willson's Crim. Stats., sec. 1980, form No. 2. But this act, known as the common sense bill, does not render unnecessary the allegation that the accused *killed* the deceased. The form therein prescribed requires such an allegation, and we here hold that an indictment for murder drawn under this form is sufficient, because it—the form—contained each and every element of which murder is composed. Upon this subject Mr. Wharton says: ' The wound must be alleged to be mortal, and death therefrom must be distinctly averred. The averment that the defendant *killed* the deceased on a certain day implies that the latter died on such day.' 1 Whart. Crim.

L., secs. 536, 537.  *  *  *  Since the Act of March 26, 1881, it is not
necessary for the indictment to describe the wound in any manner, nor
to allege that it was mortal, nor to allege in terms that the deceased died
therefrom.   The allegation that the defendant, with his malice afore-
thought, with certain means did kill and murder the deceased, is suffi-
cient." Willson's Crim. Stats., sec. 1035.   "An averment that the de-
fendant killed the deceased on a day certain implies that the latter died
on such day." 9 Am. and Eng. Encyclopædia of Law, 636.   Expunging
the surplusage as above indicated from the indictment in this case, and
the charge is that defendant "on or about the 26th day of August, one
thousand eight hundred and eighty-eight, and anterior to the presentment
of this indictment, in the county and State aforesaid, did then and there
unlawfully and with malice aforethought kill and murder Campbell Tay-
lor by cutting and stabbing him, the said Campbell Taylor, with a knife;
against the peace and dignity of the State." This is sufficient under our
statute and approved forms, and certainly implies, if it does not directly
aver, that Campbell Taylor, the deceased, died on the 26th day of August.

But it is again insisted for appellant that if said indictment be held
sufficient, and if it be held that it alleges that the deceased died on the
26th of August, the court erred in allowing the prosecution to introduce
over defendant's objections evidence showing that the wounded man did
not in fact die on that day, but lingered and languished in great pain and
suffering for the space of seven or eight days afterwards.   Defendant's
objection to the evidence is not tenable.   Whilst it is required that the
indictment must set forth the time of the alleged acts causing the death,
it is nevertheless a general rule that the proof need not strictly conform
to the averments.   Where an indictment charged that a blow was given
on the 27th of December, and that the deceased then and there instantly
died, and the evidence was that he lived twenty days after receiving the
blow and then died, it was held that the variance was not material.'"
The State v. Baker, 1 Jones (N. C.), 267.   See also 1 Archb. Crim. Pl.
and Prac., Pomeroy's Notes, 8 ed., p. 786; 9 Am. and Eng. Encyclopædia
of Law, 635, 636.

In the early case of O'Connell v. The State, our Supreme Court say:
"There is no precedent or authority for any such distinction as that
sought to be maintained by the counsel for the appellant, that the homi-
cide may be proved to have been committed before, but not after, the
time charged in the indictment, as applicable to such a case.   The time
of the commission of an offense laid in the indictment is not material,
and does not confine the proof within the limits of that period; the in-
dictment will be satisfied by proof of the offense on any day anterior
to the finding.   Whart. Am. Crim. Law, 220." 18 Texas, 366.   Mr.
Bishop says: "In general the proof of the offense need not correspond
in the day of the month and year with the allegations.   Any day before

or after within the statute of limitations and before the bringing of the prosecution will suffice." 1 Bish. Crim. Proc., 3 ed., sec. 400; Willson's Crim. Stats., sec. 1049; Lucas v. The State, 27 Texas Ct. App., 322. In this case the deceased died on the eighth day after the 26th day of August. The indictment, however, was not found, presented, and filed in court until the 11th day of the following December. It was not error to admit the evidence, and the evidence created no material variance between the allegation and proof.

The only other matter of contention raised by appellant's counsel in the able oral argument and brief upon which they have submitted the case, is that the evidence is insufficient to support the verdict and judgment, which were for manslaughter. In this we can not concur with them. If the witnesses for the prosecution are to be believed, then at least a case of manslaughter was fully made out. No complaint has been made of the charge of the court, and we have found no material error in it.

We are of opinion that the appellant has had a fair and impartial trial, and the record of his trial being free from reversible error the judgment is affirmed.

*Affirmed.*

Hurt, J., absent.