## C. B. YARBROUGH V. THE STATE.

No. 16200. Delivered October 18, 1933.
State's Rehearing Denied February 7, 1934.
Reported in 67 S. W. (2d) 612.

The opinion states the case.

*W. A. Shofner* and *Ned Elnor Moore,* both of Temple, *Wright Stubbs* and *Emmett Shelton,* both of Austin, and *DeWitt Bowmer,* of Temple, for appellant.

*James P. Hart,* Dist. Atty., *Hardy Rollers,* Asst. Dist. Atty., and *Lloyd W. Davidson,* State's Atty., of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for 25 years.

The trial was had in Travis County on a change of venue from Bell County.

We deem it unnecessary to set out the indictment, or to discuss appellant's motion to quash. The opinion is expressed that the offense is sufficiently charged.

In the afternoon of September 7, 1932, deceased, who was appellant's adopted daughter, was severely burned, from the effects of which she died in a few hours. It was the state's theory that appellant deliberately set fire to deceased.

As to motive, there was proof on the part of the state to the effect that appellant carried considerable insurance in his favor on the life of deceased. It was further shown that deceased had been frequently whipped by appellant, he having stated that she was not obedient. There was testimony on the part of the state to the effect that appellant had stated that he had to get rid of deceased on account of his wife, and that at one time he had endeavored to place deceased in some school or institution. Again, in an effort to show that appellant needed money, the state introduced witnesses who testified that appellant had executed some notes which were about to mature.

As to the circumstances surrounding the fatal burning of deceased, the proof on the part of the state was, in substance, as follows: Appellant and deceased were in appellant's garage. Hearing someone call for help, state's witness Tom Carpenter ran to the garage. Upon his arrival, he saw that there was a fire inside. Appellant was in the act of throwing the contents of a bucket on some object. As Mr. Carpenter entered the garage, appellant threw the contents of this bucket on deceased, which, upon striking her, created "A great flash." Appellant exclaimed: "My God, I have thrown the wrong bucket!" Appellant then picked up a bucket of water, which was near him, and, emptying it on deceased, ran to a hydrant for some more water, which he also threw on deceased. At the time Mr. Carpenter approached the garage, and before appellant threw the contents of the first bucket, deceased had been burned. Deceased ran into a neighbor's house. While appellant was in the yard, and after deceased entered the house, she said: "Oh Daddy, what made you do it?" Immediately after deceased ran to the house, appellant stated to Mr. Carpenter that he was working in the garage cleaning off his car preparatory to painting it; that deceased was helping him; that he had been using a blow torch to burn the grease off of the wheels and other places where it had lodged; that he put the torch on the running board of the car, and placed a board from one fender to a barrel; that he was on this board preparing to wash the top

of the car with gasoline which was in the bucket; that when he tried to move the bucket, the bail came out, turning the bucket over, and spilling the gasoline on deceased, and the lighted blow-torch. Appellant made substantially the same declaration to the sheriff of Bell County. According to the testimony of the sheriff, deceased stated to him after she had been taken to the hospital that she was helping appellant with the car when some gasoline exploded and burned her. State's witness Stratton, who testified that he was engaged to be married to deceased, said that he went to the hospital to see deceased, and that, while he was at the hospital, she said to him: "Oh why did he do it." He testified that he asked deceased: "Who did it," and that she replied: "Daddy did it." State's witness Mrs. Gregory testified that deceased talked to her about the burning immediately after it occurred. She said: "Doris told me immediately after this fire and while she was in Mrs. Mayfield's home and before she was dressed and before she was taken to the hospital, immediately after it happened, that she got burned because the gasoline turned over on her. She did not say that Mr. Yarbrough turned it over on her. She just said the gasoline turned over on her and that is the way she got her injuries." In the garage were the board, barrel, buckets and blow-torch referred to in appellant's declarations.

Appellant did not testify.

The sufficiency of the evidence is challenged on the ground that the falsity of the exculpatory statements introduced by the state was not shown. The state answers that the physical facts in connection with the garage, the actions of appellant after deceased had been burned and the declarations of deceased afford circumstances sufficient to establish the falsity of appellant's declarations. It is contended by the state that it is not reasonable to conclude that appellant, who was a trained mechanic, was cleaning his car in the manner indicated in his declarations, the point attempted to be made being that a mechanic would not work with an open bucket of gasoline near a blow-torch, and, further, that he would not undertake to clean the top of a car with gasoline. Again, it is contended that appellant could not have reached the top of the car from a board placed on the fender and barrel in the manner described by him in his exculpatory statement. It is pointed out by the state that the testimony shows that appellant did not go in the house to see deceased after she was burned. In short, the state calls attention to testimony indicating that appellant was indifferent toward deceased, notwithstanding her mortal injuries. Deceased's declarations are pointed to as statements to the effect

that appellant deliberately set fire to her. As stated, she said: "Oh Daddy, what made you do it?" Again, she said at the hospital, according to a state's witness, "Daddy did it." In connection with these circumstances, it is urged that the testimony touching motive should be considered as lending strength to the proof relied upon to meet the burden of establishing the falsity of the exculpatory declarations.

The significance of deceased's declarations as a charge against appellant is lessened by the fact that appellant had thrown the contents of a bucket of gasoline on deceased after she was already in flames. As stated, this act was immediately followed by the exclamation: "My God, I have thrown the wrong bucket." See Ex parte Yarbrough, 56 S. W. (2d) 650. Again, when such declarations are considered in connection with the further statement on the part of deceased that she was burned when the gasoline turned over on her, they cannot be taken as an unequivocal charge that appellant purposely set fire to her. The conclusion might reasonably be reached that deceased referred in the declarations relied upon by the state to appellant's act—which he declared at the time was due to a mistake—in throwing the bucket of gasoline on her. As to the physical facts and appellant's conduct after deceased was burned, it is not clear that the evidence touching such matters is necessarily inconsistent with the exculpatory declarations. However, we express no opinion as to the sufficiency of the evidence other than to say that a solution of the question is not free from difficulty.

In the light of the foregoing statement of the evidence, we consider the effect of the failure of the court to embrace in the charge an instruction to the effect that appellant's exculpatory declarations, having been introduced by the state, were to be regarded as true, unless disproved. The omission was called to the trial court's attention by proper written exception, timely presented.

It is well settled that, when the state has introduced a confession or admission of the accused containing exculpatory statements, it is ordinarily incumbent upon the court to instruct the jury that the exculpatory statements are regarded as true unless disproved. 24 Tex. Jur., p. 598; Pharr v. State, 7 Texas App., 478; Forrester v. State, 248 S. W., 40, and authorities cited. However, the rule is not applicable in all cases. Jones v. State, 13 S. W., 990; Slade v. State, 16 S. W., 253; Casey v. State, 113 S. W., 534; Pickens v. State, 218 S. W., 755; Harris v. State, 281 S. W., 206. For example, the rule has been relaxed in cases where the accused on trial testifies before

the jury and his testimony is in accord with the exculpatory features of his confession or declarations, and his defensive theory arising from his testimony and coinciding with his exculpatory theory advanced in the confession or declarations is fairly submitted to the jury in the charge of the court. Tex. Jur., supra; McKinley v. State, 282 S. W., 600. Again, it has been held that the rule is not applicable where the state does not rely for a conviction wholly upon the statement of the accused. Tex. Jur., supra; Tate v. State, 31 S. W. (2d) 453; Harris v. State, 281 S. W., 206. It is not deemed necessary to mention other instances in which the rule has been relaxed. See Tex. Jur., supra. The question, therefore, is, are the facts of this case such as to demand an instruction to the jury informing them of the existence of the rule stated, and directing that it be given application in their deliberation?

In Combs v. State, 108 S. W., 649, it was shown that Combs and his wife were picking cotton. After having removed the cotton Mrs. Combs started home. While enroute home, a shot was fired which struck her in the back, as a result of which she died. Hearing the shot, neighbors rushed to the scene. Combs had a pistol in his possession. Being questioned, he stated to his neighbors that he shot his wife, declaring, however, that it was an accident. Prior to his trial, he made substantially the same statement to the officers, in which he described the manner in which the homicide occurred. This statement was reduced to writing, and later introduced upon the trial by the state, together with the first declarations mentioned. Based on the exculpatory statements, the court charged on accidental homicide. Combs sought a charge on exculpatory statements, which was refused. Notwithstanding the court submitted the affirmative defense of accident, this court, in an opinion by Judge Ramsey, reversed the judgment for the failure to give the charge.

Forrester v. State, 248 S. W., 40, presents a situation somewhat similar to that disclosed in the opinion in Combs' Case, supra. It was shown that one Posey was shot and killed, and that his wife was killed by blows from some blunt instrument. Forrester went from the scene of the homicide to a neighbor's house, where he made the statement, in effect, that Posey tried to kill his wife with an iron bar, and that he interfered; that Posey then attacked him; and that he thereupon shot Posey in self-defense. Upon the trial the state introduced the exculpatory declarations. The court affirmatively submitted instructions covering self-defense and defense of another. Notwithstanding the submission of these matters, this court held the

omission from the charge, over the appellant's exception, of an instruction covering the law of exculpatory statements to be reversible error. From the opinion, we quote the language of Judge Morrow as follows: "The purpose and effect of this testimony was to identify the appellant as the slayer of Posey. The state having introduced it, and, in connection with it, the statement that the deceased was about to kill his wife, it cannot ignore this later exculpatory or mitigating fact. It can be disposed of only by proof of its falsity. It is not to be understood that the state, to prove its falsity, would have to introduce direct and affirmative evidence. It would be enough that its falsity appear to the satisfaction of the jury, beyond a reasonable doubt, from any or all of the facts before the jury. The exculpatory inference drawn from the declaration, namely, that the appellant shot Posey to prevent his killing his wife, was submitted to the jury as a defensive matter. It arose alone from the declaration of the witness Mrs. Herrod. In passing upon its truth, the precedents to which we have adverted, we think, under the facts of the instant case, made it imperative that the court, upon proper exception to its charge, should so amend it as to inform the jury that the exculpatory declarations of the appellant would be taken as true, unless its truth was refuted by the facts in evidence."

In the present case, the purpose and effect of the introduction by the state of the exculpatory declarations was to connect appellant with the burning of deceased. Stated in another way, the state sought, by introducing the declarations, to complete the proof of the corpus delicti by showing appellant's connection with the death of deceased. On the facts, we are unable to discern any features distinguishing the situation before us from the Comb's and Forrester Cases, supra. As stated, in those cases, as well as in the case at bar, affirmative defensive charges were based on the exculpatory declarations introduced by the state. From what we have said, we are constrained to hold that, under the record, the failure of the trial court to so amend the charge as to inform the jury that the exculpatory declarations of appellant would be taken as true, unless their truth was refuted by the facts in evidence, presents reversible error.

The state combats the view that there was error in declining to give the charge on the proposition that the affirmative instruction on accidental homicide afforded adequate guide for determining the truth or falsity of the exculpatory declarations. The opinion is expressed that this position is untenable. As stated, appellant did not testify. If he had testified upon the

trial to the matters embraced in the exculpatory statements introduced by the state, it might properly be urged that the defensive charge on accident obviated the necessity of an instruction on exculpatory statements. With appellant before them as a witness, the jury might, in exercising their prerogative of determining the credibility of the witnesses and the weight to be given to their testimony, have properly rejected appellant's testimony as untrue. As to the situation presented here, the right to declare the exculpatory declarations introduced by the state to be false would appear to be not as broad as the authority to determine that the testimony of a witness before the jury is untrue. As to exculpatory statements relied upon and introduced by the state, it must be found by the jury that their truth is refuted by the facts in evidence before they can be rejected. Thus in the case of exculpatory statements introduced by the state, the measure applied in determining their truth or falsity is the sufficiency of the refuting facts in evidence, while in the case of the witness before the jury the right to reject the testimony of such witness lies in the authority of the jury to determine his credibility and the weight to be given his testimony. Manifestly, under the facts of the present case, the omission from the charge of the instruction in question left the jury without adequate guide to determine the truth or falsity of the declarations. It cannot be said that, under the charge of the court, the jury did not feel warranted in rejecting the exculpatory declarations, notwithstanding they might have reached the conclusion that the circumstances relied upon by the state to refute the truth of such declarations were not of sufficient cogency.

Appellant excepted to the charge for its failure to embody an instruction covering the law of circumstantial evidence. We think this exception was well taken. Without entering into a detailed discussion of the evidence, it is observed that, according to appellant's version, the bail slipped from the bucket containing gasoline as appellant reached for it, and the gasoline spilled on deceased and was ignited by the burning torch that was nearby. According to a state's witness, deceased stated to her, in effect, that the gasoline turned over on her. We think that appellant's declaration, considered in connection with deceased's declaration concerning the matter, constitute but circumstances from which the inference might be drawn that appellant intentionally set fire to deceased as charged in the indictment. It is true that the state's testimony was to the effect that after she had been burned deceased said: "Oh Daddy, what made you do it?" and that at the hospital, according to the version

of the state, she said: "Daddy did it." However, these statements are not, in our opinion, unequivocal declarations that appellant set fire to deceased. Such last mentioned statements might be construed as a reference by deceased to appellant's act in casting the contents of the first bucket on her at a time when he declared that he had made a mistake. At the time of this act on the part of appellant deceased was already in flames. Taken as a whole, the evidence on the part of the state, in our opinion, consists of circumstances from which the state sought to draw the inference that appellant intentionally set fire to deceased. Hence we are constrained to hold that the proof of the main fact rests in a legal sense upon circumstantial evidence.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—The state, through the Honorable James P. Hart, district attorney, and his assistant, the Honorable Hardy Hollers, has filed a most able and persuasive motion for rehearing, urging that this court was in error in predicating a reversal upon the two propositions discussed in our original opinion. The motion reflects much labor and reviews many authorities bearing on the questions involved. Said attorneys are to be commended for their zeal and interest in urging their views. The cases cited by them have again been examined. A review of them at this time would extend this opinion to undesirable length. Whether certain instructions should be given to the jury must, of course, turn upon the facts of the particular case. We believe our original opinion clearly demonstrates that under the facts of the present case the instructions sought should have been given. The writer confesses his inability to more clearly express our views than was done by the writer of the original opinion.

Believing the case was properly disposed of, the motion for rehearing is overruled.

*Overruled.*