CHESLEY ARTHUR GRAGG V. THE STATE.

No. 22938. Delivered January 17, 1945. Rehearing Denied April 4, 1945.

The opinion states the case.

GRAVES, Judge, dissenting.

*John Russell,* of Cleburne, and *Henry Tirey* and *Baskett & Parks,* all of Dallas, for appellant.

*J. Dean Gauldin,* Criminal District Attorney, and *Robert B. Allen, Jr.,* Assistant District Attorney, both of Dallas, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted of the murder of his wife and the jury assessed the death penalty.

The indictment charges Chesley Arthur Gragg did on the sixteenth day of June, 1943, with malice "kill Flora Gragg, by then and there drowning the said Flora Gragg, * * *." The appeal raises the question as to the sufficiency of this indictment. We know of no better way to express our conclusion than the following language from Jackson v. State, 28 S. W. 815:

"Omitting preceding portions, the indictment charges that appellant 'did unlawfully, with malice aforethought, murder and kill Sam Crow by shooting the said Sam Crow.' It was moved in arrest of judgment that the indictment was fatally defective, because it failed to allege the means or weapon used by appellant in committing the homicide. We think the motion should have prevailed. Such has always been the law, and under the common-sense indictment act of 1881 this is required. Wilson's Cr. St. art. 428k, form No. 2; Drye v. State, 14 Tex. App. 191; Cudd v. State, 28 Tex. App. 124, 12 S. W. 1010. The rule in this respect requires that the means or weapon employed in bringing about the homicide, if known, must be set forth; and, if not known, that fact must be pleaded in appropriate terms. Sheppard v. State, 17 Tex. App. 74; Walker v. State, 14 Tex. App. 609. The judgment is reversed, and the prosecution is dismissed."

This opinion was followed in Huddleston v. State, 156 S. W. 1168, and we are of the opinion that the rule applies in the case before us.

The State has filed a very exhaustive and helpful brief, in which the position is taken that the indictment is sufficient. The argument there presented is plausible but we do not think it is sustained by the authorities cited. If the manner and means used in accomplishing the drowning were unknown to the grand jury, and could not have been ascertained by reasonable diligence, the indictment should have so stated. If there is only one method of drowning, and water the only article by which it can be accomplished, then force would be added to the State's position. The State cites a definition of drowning found in 28 C. J. S., page 496, from which we quote the following language: "DROWN. To deprive of life by immersion in water or other liquid; * * *." For this definition reliance is had on Webster's International Dictionary, where we find the identical definition: "To deprive of life by immersion in water or other liquid." There being more

than one means by which the drowning may be accomplished, the indictment does not inform the accused with sufficient accuracy of the offense for which he is charged to comply with the holdings of this court and it cannot, therefore, be sustained.

Appellant was convicted on circumstantial evidence and great reliance was had on the statements of the accused in which there is exculpatory language. It is seriously contended that the State is bound by this language and that such exculpatory statements were not disproved. If there is no evidence introduced by the State to disprove the exculpatory statements, the theory invoked would apply. The contradictory statements and all the circumstances appear to do this. The writer is of the opinion that the State has shown strong motive, with intention definitely expressed which, in connection with all of the circumstances, clearly support the jury's verdict. However, this view is not approved by all the members of the court and it is but fair to the litigants that they be informed of the situation, in view of the likelihood of another trial.

For the reasons stated, the judgment of the trial court is reversed and the cause ordered dismissed.

GRAVES, Judge (dissenting).

I am not in accord with my Brethren in all their views expressed in the majority opinion herein, and therefore present my ideas of the disposition of this cause.

Appellant was charged with the murder with malice of his wife, Flora Gragg, by drowning her, and was assessed a death penalty by the jury.

Appellant was ably represented by counsel of his own choice, who bring to our attention many alleged errors in the trial, and for a full understanding of this opinion it is deemed proper to epitomize the facts here presented.

The deceased had been married prior to her marriage to appellant, and had a child, a boy about ten years old, by a former husband. There seemed to have been some disagreement between this couple, and at one time a divorce suit had been filed by the deceased against appellant. However this suit was soon dismissed by appellant's orders, the deceased also being present, and evidencing her consent thereto by a nod of the head. Sometime prior to the death of Flora Gragg appellant became enam-

ored of a young girl, Annie White, and evidently lived with her in adulterous relations for some three weeks. Soon after such relations Miss White, fearing herself to be pregnant, went with appellant to see a doctor, who evidently gave such pregnancy some probability. Eventually Miss White returned to her home, with appellant's promise that he would get a divorce from his wife and at an early date marry Miss White. They carried on a spirited correspondence, writing each other often, and appellant's letters to her, about thirty-two in number, bore the continued refrain that it would not be long until appellant would have the White woman in Dallas at his home. In these letters the address was to "his darling wife," and usually signed "Your husband C. A." These letters were to a large extent salacious and filthy, and contained, among other things, references to his progress in a supposed divorce suit against his wife, and his intention of soon being rid of her and taking his paramour home to live with appellant. These letters continued, some of them being written after the wife's death, in which an engagement ring, a diamond ring, and a lady's watch were sent to the White woman, and a further promise of $500.00 in cash to be sent soon. No news is found in such letters about the deceased's death, save a newspaper clipping enclosed in one of the last letters, five days after Mrs. Gragg's death, with the following statement in the letter of June 21, 1943: "Honey, I will send you something about her and you will know where she is and also know that I am here by myself, and I will always will be till I get my baby back home." On that day he sent the watch and rings, and on the next day he made arrangements for the White woman to come to Dallas and meet him, this date being seven days after Mrs. Gragg met her death by drowning.

On the afternoon of June 16, 1943, appellant, his wife and her son went down to a bar-pit beside the Corinth Street viaduct in Dallas, Texas, and about 11:30 o'clock that night firemen of the Dallas fire department recovered two human bodies, about twenty feet apart, one of a woman and one of a boy, from beneath the deep waters in such pit, and Mrs. Gragg's body was identified; this was about 11:30 o'clock at night. Appellant was present at the scene, having given the alarm and called for the officers. He gave conflicting accounts of how his wife met her death, claiming that the boy went to sleep in the boat and fell off in the water; that his wife seeing this said: "My God Daddy," and jumped out of the boat into the water, and neither she nor the boy ever came up. His excuse would sometimes be given for not giving them aid, that he could not swim, which fact was denied by witnesses, or that he always took cramps when in the water, or that he took off his clothes and did jump

in, and dived down, it felt like forty feet, and could not find the bodies, or that while on the bank his wife and child slipped into the water. All his accounts of the drowning, however, in each instance failed to inculpate him in any degree, or to show any other means of death save that deceased leaped into the water in order to save the life of her child, and that she immediately disappeared, and her body never came up.

We find set forth in the State's able brief fifty-six circumstances pointing towards a motive upon appellant's part, but nowhere do we find any circumstance that shows any overt act. upon his part that caused the drowning of this wife and mother. There were no marks of violence upon her person shown in the evidence, and no overt act testified to by anyone. There were two peace officers who were in the vicinity of the scene of this drowning at about 6 o'clock in the afternoon until about 10:30. They were for a time parked under the Corinth Street viaduct, about 200 feet from the water near this viaduct, watching for a stolen car. The moon was shining that night and they were plagued by swarms of mosquitoes to such an extent that they were forced to close the windows of their car. They finally parked their car near what we understand was appellant's pickup truck. During the time they were so waiting they saw a man in a boat on this bar-pit surface; the man was alone and no other boat was on this water. Such person seemed to be paddling aimlessly about on the water, and did not seem to be fishing; no one else was there or in the boat. Eventually they left the scene about 10:30, and about 11 o'clock the alarm came in relative to this drowning. The time of giving the alarm by appellant was about 11 o'clock at night, and in about thirty minutes the fire department, as well as the peace officers, appeared and recovered the bodies in about forty-five minutes. When these bodies were recovered it was testified that they were becoming rigid, and evidenced the fact that they had been dead from three to four hours.

It is unquestionably shown by much testimony that appellant was possessed of strong motives upon his part to take the life of his unfortunate wife and to possess himself of his paramour. Motive, however, while admissible and persuasive, is not a necessary matter of proof, as we have held in many cases. We said in Wilkie v. State, 83 Texas Cr. R. 490, 203 S. W. 1091:

"Motive is not always necessary, yet if existent it is a circumstance to be considered by the jury in connection with other facts."

The only person who could testify as to any overt act upon appellant's part was appellant; the only person living who could place anyone at the death scene was the appellant himself, and he was the only one who could describe the manner of death. In all of his contradictory stories he never fails to declare the death to have been accidental and without fault upon his part. There being no further witness, in order to show these surrounding facts, the State was forced to use appellant's statements in making out a case, each of which not only failed to inculpate appellant, but actually inculpated him, leaving the State with the duty of disproving same, which they could only do by showing the various contradictory statements made by appellant to different parties at the time of the recovery of the bodies. It is worthy of note that appellant did not take the stand, nor offer any original testimony herein. I think the proper rule has been laid down in the case of Otts v. State, 135 Texas Cr. R. 28, 116 S. W. (2d) 1084, 116 A. L. R. 1454, especially in the opinion on motion for a rehearing wherein Judge Hawkins said:

"Where the defendant does not testify in the case, and where the State in developing its case in chief introduces in connection with a confession or admission of the defendant an exculpatory statement which if true would entitle him to an acquittal, the jury should be told that he is entitled to a verdict of not guilty unless such exculpatory statement has been disproved or shown to be false by other evidence in the case."

I call attention to the authorities therein cited, and in their light I am of the opinion that the State, doubtless through a lack of witnesses, has been unable to show the falsity of these statements of appellant showing an accidental drowning.

Appellant's attorneys at the proper time made a motion to quash the indictment herein which reads in its charging part as follows:

"* * * that one Chesley Arthur Gragg on the 16th day of June in the year of our Lord One Thousand Nine Hundred and 43, with force and arms, in the County and State aforesaid, did then and there unlawfully, voluntarily, and with malice aforethought, kill Flora Gragg, by then and there drowning the said Flora Gragg, contrary to the form of the statute," etc.

The objection to said indictment being "because the indictment does not allege whether the deceased was drowned in water, coffee, tea or what."

We are cited by appellant's attorneys to the case of Jackson v. State, 34 Texas Cr. R. 38, 28 S. W. 815, in which it was held that an indictment alleging that the accused "did unlawfully and with malice aforethought, murder and kill Sam Crow, by shooting the said Sam Crow" was fatally defective "because it failed to allege the means or weapon used by appellant in committing the homicide."

Again we note that Drye v. State, 14 Tex. App. 191, lays down the doctrine as above announced in the Jackson case, supra. Again in the case of State v. Williams, 36 Tex. Sup. Ct. 352, the Supreme Court of this State held an indictment fatally defective which failed to state the "manner and means by which deceased met his death."

We also find the case of Huddleston v. State, 70 Texas Cr. R. 260, wherein the indictment was quashed, in which the first count thereof charged a killing by stabbing with a knife, and the second count setting forth the killing "by stabbing him with some sharp instrument," the holding being that the second count just above mentioned was an insufficient charge, and it should have been followed by the allegation that the nature of such sharp instrument was unknown to the grand jury.

We also recognize the effort upon the part of the 17th Legislature, p. 60, to simplify the form to be followed in a murder indictment by attempting to lay down a form therefor as is shown by Art. 409, C. C. P. However, at the same time and place the Legislature offered a further statute, Art. 412, C. C. P., which reads as follows:

"An indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant."

Evidently this was an effort upon the part of our representatives to get away from our long and labored forms of indictments for murder that demanded meticulous pleading of such preliminaries as the loading of the gun with powder, wadding and ball and its discharge in and upon the body of the deceased, creating a mortal wound from which the assaulted party then and there instantly died.

We further recognize the fact that many forms laid down in what came to be known as the "Common Sense Indictment

Act" failed to withstand the close scrutiny of the courts and offended against the Constitution. However, we also call attention to Art. 405, C. C. P., which sets forth the certainty demanded of an indictment as follows:

"An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction to pronounce the proper judgment; and in no case are the words 'force and arms' or 'contrary to the form of the statute' necessary."

The basic reason demanding certainty in an indictment lies in the fact, as stated in Art. 405, supra, that an accused is entitled to know and be informed as to what he would be called upon to defend against, as well as to be able in the future to plead the instant trial, if needs be, in bar of any subsequent trial therefor.

The present indictment reads, in substance, that appellant with his malice aforethought did kill the deceased by drowning her.

Webster's New International Dictionary defines "drown" to mean: "To be suffocated in water or other liquid, to sink and perish in water."

In a murder case as herein charged with the common and accepted meaning of the verb "to drown" imports a drowning in water, and such is the usual and accepted meaning in ordinary and concise language. Art. 405, C. C. P. This language surely and certainly told appellant that he was charged with drowning his wife on June 16, 1943, and gave him warning to prepare to defend himself against such a charge on that date. Mrs. Gragg could be killed but once, and the appellant could not have been misled by thinking that he was to be tried for again killing her at another time and place, or drowning her in some other liquid than water. The main thing to be settled in this trial was whether the lady came to her death, at the hands of appellant, by being drowned, which means, in common acceptance, suffocated in water.

Our criminal jurisprudence has come a long journey, in so far as indictments for murder are concerned, leaving behind by

the mutations of time the labored machinery of the common law in simplifying the language used in the charging portions of murder indictments, and it would do violence to reason to say that an accused is not notified in ordinary and concise language of the accusations laid against him when he is told that he is accused of drowning his wife.

Thus believing, I am constrained to hold the indictment herein to legally charge the offense of a killing by drowning in water.

On the proposition first noticed herein, I am of the opinion that the evidence herein presented before us is insufficient to exclude every other reasonable hypothesis than that of appellant's guilt.

ON STATE'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State's motion for rehearing agrees with Judge Beauchamp's opinion wherein he holds the evidence sufficent, but sharply challenges the holding that the indictment is bad. On the other hand, the motion agrees with the dissenting opinion of Judge Graves that the indictment is sufficient, but disagrees with the conclusion therein expressed that the evidence is insufficient.

We agree with the State in its position that in ordinary understanding the averment that deceased was "drowned" means that she was drowned in water. But to our mind the defect in the indictment does not occur at that point. It is not necessary to cite authorities upon the proposition that in an indictment for murder the means of death, if known, must be averred; if by shooting, that it was with a gun, if by cutting or stabbing or beating, the instrument with which it was done. So in the present case there should be an averment of some overt act of the accused which brought about the drowning of his wife, if such act is known. To illustrate, that he pushed her from the bank into the water, or that he pushed her out of a boat into the water, or held her head under the water. If the exact means employed to effect the drowning is not ascertainable the State may always protect itself by an averment that the means and manner of effecting the drowning is unknown to the grand jury. For the reasons above indicated we remain of the opinion that the present indictment is bad.

In regard to the second proposition of the State contending that a reversal should not be predicated upon the claim that the

evidence is insufficient the present writer admits that upon original submission he was inclined to that view. The statement of facts has been particularly re-examined with that contention directly in mind, and I now find myself far from sure that my first impression was correct. The case does not turn upon whether a charge upon the effect of exculpatory statements should have been given, as was the question in Otts v. State, 135 Tex. Cr. R. 187, 117 S. W. (2d) 463, but upon the effect of many contraditory and conflicting statements proven to have been made by appellant, which were evidently put in evidence by the State as circumstances along with others as tending to show appellant's criminal connection with the drowning of his wife.

The majority of the court is of the opinion that the reversal and dismissal of the prosecution under the present indictment should stand, and the State's motion is therefore overruled.

BEAUCHAMP, Judge (Concurring).

I am concurring in each and every expression of the opinion by Presiding Judge Hawkins in overruling the State's motion, and reasserting my belief, as expressed in the original opinion, that the evidence is sufficient to support a conviction.

The State has evidently overlooked an expression in the original opinion in which it was said "If the *manner* and *means* used in accomplishing the drowning were unknown to the grand jury, and could not have been ascertained by reasonable diligence, the indictment should have so stated." Attention is called to the fact that the manner of the drowning is really and in fact the important ingredient in the indictment. Both the appellant and the State, in the original presentation, gave extended attention to the question of the failure to allege the particular fluid. This caused more attention to be given it in the original opinion than to those matters not discussed either by the prosecution or the appellant. Such fact apparently has confused the State. Special attention is called to the foregoing quoted portion which was made the basis of the conclusion in the original opinion. The word "means" within itself would include quite a good deal more than the fluid. If the State will so understand, the principal portion of its complaint about the holding as to the sufficiency of the indictment would be eliminated. Judge Hawkins has made this sufficiently clear and it is only necessary for the writer to say that it expresses with accuracy the view intended to convey.