CHESLEY ARTHUR GRAGG V. STATE.

No. 23955. May 12, 1948.
Rehearing Denied November 3, 1948.

Hon. W. C. Dowdy, Judge Presiding.

GRAVES, Judge, dissenting.

*J. W. McCullough,* of McKinney, and *G. Ray Lee,* and *A. S. Baskett,* both of Dallas, for appellant.

*Paul Worden,* Criminal District Attorney, of McKinney, *Will R. Wilson, Jr.,* Criminal District Attorney, *Henry Wade,* and *George P. Blackburn,* Assistants District Attorney, and *Jimmy MacNicoll,* all of Dallas, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted of murder and sentenced to life imprisonment in the penitentiary. The case originated in Dallas County and was transferred to Collin County for trial.

We are asked to reverse the case and our attention is directed principally to the contention that the evidence is insufficient to warrant a conviction for three reasons: First, it is contended that in as much as the indictment alleges that "the manner and means of effecting said drowning being to the grand jury unknown," it was incumbent upon the State to show that the grand jury used due diligence and was unable to ascertain the manner and means used. Second, the State introduced some five or six statements made by appellant soon after the commission of the alleged offense in which he made exculpatory statements completely exonerating himself from any blame. It is presented that the State is bound by such evidence because it did not show the falsity of these statements. The other, and third contention, which calls for consideration of all of the evidence in the case, is that the State failed to prove the corpus delicti. The questions will be considered in the order stated.

The indictment in this case is drawn following the suggestion in the opinion on a former appear, which reversed the case and held the indictment insufficient, from which we quote (186 S. W. (2d) at page 247) as follows:

"We agree with the State in its position that in ordinary understanding the averment that deceased was 'drowned' means that she was drowned in water. But to our mind the defect in the indictment does not occur at that point. It is not necessary to cite authorities upon the proposition that in an indictment for murder the means of death, if known, must be averred; if by shooting, that it was with a gun, if by cutting or stabbing or beating, the instrument with which it was done. So in the present case there should be an averment of some overt act of the accused which brought about the drowning of his wife, if such act is known. To illustrate, that he pushed her from the bank into the water, or that he pushed her out of a boat into the water, or held her head under the water. If the exact means employed to effect the drowning is not ascertainable the State may always protect itself by an averment that the means and manner of effecting the drowning is unknown to the grand jury."

The indictment complies with the law and is sufficient. The further proposition presented thereon, that it was incumbent upon the State to show that the manner and means used were not known to the grand jury, is sound. Due diligence in presenting the case to the court would suggest that such fact be proven by some member of the grand jury, or one in position to know what took place. This procedure is recommended. It was not done, as shown by the record. It is the consistent holding, however, that when all of the facts and circumstances of a case clearly show that the grand jury did not know the manner and means used the law is thereby complied with. McNiel v. State, 100 S. W. (2d) 365; Moree v. State, 183 S. W. (2d) 166; Texas Jur. Vol. 22, p. 622, Sec. 123.

From all the circumstances of the case, hereinafter detailed, it is perfectly apparent that no one was present when the drowning took place except appellant himself. His own testimony reveals that fact. There is nothing in his statement to lead them to investigate further. He denied that he used any means. This was known to the prosecution at the time of the indictment.

Appellant has presented with much insistence that the State had introduced some five or six witnesses who testified to statements made by appellant soon after the drowning which,

if true, would show that the death of his wife was accidental and no fault of his. Having introduced this evidence the State is bound by the exculpatory statements contained therein unless it succeeds in proving the falsity of them. This it may do by direct testimony or it may be shown to the satisfaction of the jury by all of the facts and circumstances of the case. The question then may be discussed under the proposition that the evidence was insufficient to show the corpus delicti. If it is sufficient then the exculpatory statements may be thereby contradicted. If not, the State's case must fall on both propositions.

This conviction rests exclusively on circumstantial evidence. Appellant had married Flora Gragg, a widow who had one son named Brady Lynn Blassengame, about ten years of age. During the marriage and prior to the drowning, appellant had served some time in the army. After returning to Dallas he was employed in a manufacturing plant. According to the State's theory, he became enamored of a young girl named Ann White, from Titus County, Texas, who was working at another plant in or near the city. They lived together in adulterous relations for some days. The girl feared herself to be pregnant and, in agreement with appellant, she returned to her home from which she and appellant carried on a spirited and salacious correspondence. Some twelve or more letters from her and thirty-two from appellant were introduced in evidence. These letters gave evidence of a plan which would culminate in their marriage. At the first trial of the case Ann White appeared as a witness in behalf of the State. She identified the letters and testified as to conduct between her and the appellant, leading up to and after the death of his wife. Subsequently she married a brother of appellant and came into court at this time and testified in behalf of the defendant. She claimed she had been forced to give the testimony at the former trial. She corroborated appellant and her husband in their evidence to the effect that the letters were written by appellant but for his brother, whom she later married, who could not read or write. This evidence will not be discussed further than to say that much of it is contradictory of the wording in the letters themselves, and contrary to the circumstances surrounding the two brothers. The jury did not believe it. Counsel representing appellant have not asked this Court, either by brief or oral argument, to give force to it.

Prior to the drowning and during the time that appellant and Ann White were engaged in their correspondence, Flora Gragg had pending in the court a suit for divorce against appellant. The correspondence made reference to a suit—which

the State contends was this divorce suit. Shortly prior to the drowning appellant went to the attorney representing his wife and demanded that he dismiss the divorce suit, which was done. It is further shown by the evidence that life insurance policies had been taken on the wife and her son in favor of appellant. After their death he proceeded with the collection of these policies. There was some property, consisting of a house, an automobile, and other personal property the nature and extent of which is not fully shown. The letters from appellant to Ann White at least made indirect reference to this property and to money, which the State infers was the proceeds of the insurance policies.

With this background, it was shown that he went with his wife and step-son to a lake or tank by the side of the road, in the outskirts of the city, to fish; that after being there several hours he went to a package store, at about eleven o'clock at night, to make a call for assistance, stating that his wife and son had drowned. At this time he told the proprietor of the store that they were fishing on the bank and the boy slipped into the water and the wife jumped after him. He said he was thirty or forty yards away in a boat. Officers were called to the scene and appellant, who was not arrested for some days thereafter, made several statements to different parties including the sheriff and, while in each he exonerated himself by exculpatory statement, they were in a material way inconsistent. Other statements placed all of the parties in the boat at the time the boy fell in the water and the wife jumped after him. When the bodies were recovered they were a considerable distance from the bank. For several hours prior to the alarm which he gave, two officers were parked under a bridge nearby and watched a man paddling about aimlessly alone in a boat. They left at 10:30, about thirty minutes before he gave the alarm. Their evidence directly and positively contradicts his statement that the three of them were in the boat during such time. Soon after the arrival of the officers the bodies were recovered and they were found to be rigid, indicating that they had been drowned something like three hours prior thereto. This also contradicts the exculpatory statements made by him in that it shows the drowning to have taken place long before the time stated by him. It reveals the unnatural circumstance that he did not report the drowning for several hours. Possibly he waited until the officers parked nearby had gone.

Based on this evidence and on the further fact that he had promised Ann White to free himself from his wife, that he

represented to her he had property which he said he would possess, that he went to the lawyer representing Mrs. Gragg and demanded the dismissal of the divorce case, his intention to get rid of his wife, to possess the property and collect the insurance, to some degree reveal his plan to do the thing that the evidence shows was done—to destroy the life of his wife and her son. By this he would inherit the property and collect the insurance.

Admittedly, the foregoing discussion of the evidence would be strengthened by a more detailed account of all of the things that took place, as shown by the record, but it is not believed to be necessary. The jury's verdict settled the matter. The only concern we have is to determine that there was sufficient evidence to support the verdict which the jury returned. Even though it is circumstantial, and with the full realization that unfriendly circumstances are sometimes unjust, it is our opinion, nevertheless, that the evidence fully justifies the prosecution and sustains the jury's verdict. The fact that appellant took the witness stand in his own behalf this time, and that his brother and the former Ann White testified contrary to evidence upon which the State strongly relied in the first trial, does not in our opinion weaken the State's case. The fact that he gave the story about the letters so unbelievable and so contrary to the circumstances surrounding the parties may be regarded as an expression of consciousness of guilt.

The case of Parks v. State, 124 Tex. Cr. R. 405; 63 S. W. (2d) 301, is in many respects very similar. The case was affirmed on what appears to be less persuasive evidence. Reference is here made to that case, together with the authorities therein discussed, as authority for the conclusion that the corpus delicti was proven in the instant case. The self-conflicting statements in that case were given consideration. Their force must have been viewed as we appraise them in the instant case.

There are other questions raised complaining of the introduction of certain evidence, and the failure of the court to permit the introduction of other testimony. We have considered these bills and do not feel that they are of sufficient importance to require discussion.

All other bills are overruled and the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

This is the second appeal; the opinion on the first appeal will be found reported in 148 Tex. Cr. R. 267, 186 S. W. (2d) 243.

In his motion for rehearing appellant renews his insistence that the evidence is insufficient to sustain his conviction. The majority of the court held to the contrary upon the first appeal. In the original opinion, upon this appeal the evidence is set out at considerable length. The letters written by appellant to Ann White contain many incriminative statements and suggestions. The claim of appellant upon this trial that the letters, while written by him, were written for his brother, furnished a basis upon which the jury could have predicated a belief that the claim now made was a subterfuge and a fabrication of evidence. This, to our minds, adds to the cogency of the evidence of appellant's guilt. We adhere to the conclusion expressed in our original opinion that appellant's contention that the evidence is insufficient can not be sustained.

Appellant requested the trial court to give the following special charge.

"You are charged as a part of the law of this case to be considered by you along with the main charge of the court to the jury that the State has introduced in evidence through the testimony of six witnesses that the defendant said that the said Flora Gragg jumped in the water in an attempt to rescue her son, Brady Lynn Blassengame, and you are charged that the State having introduced said statements in evidence is bound by them unless the State has, by other evidence, proven said statements to be false or untrue; and in that event, unless the State has, by other evidence, proven to your minds, beyond a reasonable doubt that said statements were untrue, you will return a verdict of 'Not Guilty' in this case."

The charge was refused and exception reserved. In his motion for rehearing appellant relies largely upon the bill as presenting reversible error.

In the opinion on rehearing upon the former appeal (148 Tex. Cr. R. 267, 186 S. W. (2d) 243, at page 247) is found the following announcement.

"The case does not turn upon whether a charge upon the effect of exculpatory statements should have been given, as was the question in Otts v. State, 136 Tex. Cr. R. 187, 117 S. W. (2d) 463; Id., 135 Tex. Cr. R. 28, 116 S. W. (2d) 1084, 116

A. L. R. 1454, but upon the effect of many contradictory and conflicting statements proven to have been made by appellant, which were evidently put in evidence by the State as circumstances along with others as tending to show appellant's criminal connection with the drowning of his wife."

The facts upon the present trial were substantially the same as upon the former trial, and in view of the statement quoted from the former opinion the trial judge was clearly warranted in refusing the special charge. This court would not hold its refusal error unless convinced that its holding upon the former appeal was clearly wrong.

From 4 Tex. Jur., pages 533 and 534, paragraph No. 378, we quote:

"A ruling by the appellate court upon a question of law raised on a former appeal will be considered as the law of the case in all subsequent proceedings in the same case, unless the ruling was clearly wrong and harmful. As has been well stated by the Court of Criminal Appeals:

" 'Were the rule otherewise, trial courts would in a great measure be at sea, and would feel inclined and be authorized to give but little weight to the decisions of the (appellate) court. However, if it appeared that the decision was wrong, and a substantial injury has been done a citizen of this state by such decision, it would be our duty and pleasure to remedy that wrong.' "

See cases cited in notes which support the text.

Appellant's contention that the refusal of the requested charge was error might well be overruled for the foregoing reasons, but because appellant urges the contention with so much earnestness we consider it at some further length.

Appellant testified that at first he and his wife fished from the bank, and the boy from the boat which was tied to the bank; that later he and his wife also got in the boat, and they moved out in the middle of the lake or stream and fished there from the boat; that when they were starting to go home the boy fell out of the boat, and appellant's wife jumped in after the boy; that both went down and never came up.

Based upon this evidence the court gave the following instruction:

"You are further instructed that if you believe from the evidence, or have a reasonable doubt thereof, that Flora Gragg fell into the water accidently, or jumped into the water of her own volition, then the defendant can not be convicted in any such event for a failure or neglect to render aid to her, or for a failure, if any, to attempt to rescue her, and if you so believe, or have a reasonable doubt thereof, then you shall acquit the defendant."

In the opinion on rehearing in Otts v. State, 135 Tex. Cr. R. 28, 116 S. W. (2d) 1084, this court realized that some confusion existed as to the necessity or otherwise of charging upon the effect of exculpatory statements or confessions, and some exceptions were noted, and the following is quoted from that opinion.

"One exception to the rule which should cause no confusion is where the defendant testifies and his testimony corresponds to the exculpatory statements put in evidence by the State, and the defensive issue arising from his testimony is fairly submitted to the jury. The reasons which obviate the necessity for charging on exculpatory declarations under such circumstances are clearly set forth in Yarbrough v. State, 125 Tex. Cr. R. 304, 67 S. W. (2d) 612."

This holding has been followed in Houston v. State, 143 Tex. Cr. R. 460; 158 S. W. (2d) 1004; Lindsey v. State, 146 Tex. Cr. R. 459, 176 S. W. (2d) 192. The record brings the complaint of the refusal of the requested charge squarely within the exception mentioned, and the authorities cited.

Other exceptions to the court's charge, and bills of exception are not thought to present reversible error.

The motion for rehearing is overruled.

GRAVES, Judge, (dissenting).

I think the effort on the part of appellant to fasten the authorship of the many letters to Ann White on his brother has increased to some extent the circumstances proven herein and the effect of the State's proof. Nevertheless, I remain of the belief, as stated in the former trial hereof, that the facts are insufficient to show appellant's guilty participation in the drowning of his unfortunate wife.