Kenneth WOODSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–88–061–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1989.

Carl Lewis, Tinker & Tor, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

KENNEDY, Justice.

A jury found appellant guilty of murder and assessed punishment at life imprisonment in the Texas Department of Corrections. Appellant asserts five points of error. We affirm the conviction.

On June 15, 1983, Mr. Gabriel Gengler was killed in his motel room. Mrs. Gengler testified that while she was asleep, her husband left the room to get some ice. She awoke upon hearing a scratching noise coming from the door. When she first heard the noise, she turned on the bedside light and put on her eyeglasses. When Mr. Gengler entered the room, he was accompanied by a man carrying a handgun. Mrs. Gengler testified that she could see the intruder's face when he entered the room, while he was in the room, and when he left the room. Although he was initially wearing a baseball cap and wig, both dropped to the floor when he turned to flee after shooting Mr. Gengler. Mrs. Gengler testified that the intruder was in the room for five to seven seconds. Shortly after the shooting, Mrs. Gengler described her husband's murderer to the police.

In August of 1983, Mrs. Gengler received a newspaper clipping from her brother which contained a photograph of the appellant accompanied by a news story depicting the appellant as a suspect in Mr. Gengler's murder as well as a suspect in various robberies in the San Antonio and Corpus Christi areas. Mrs. Gengler testified that she immediately recognized appellant as the man who shot her husband.

On September 1, 1983, the police presented to Mrs. Gengler a photographic array which included a photograph of the appellant. Mrs. Gengler then made an unequivocal and positive identification of the appellant.

Appellant was tried for murder in two previous trials, both ending in a declaration of mistrial as neither jury was able to reach a unanimous verdict. This appeal is taken from the third trial in which appellant was tried for capital murder and convicted of the lesser included offense of murder. The more serious capital murder charge of the third trial arose from the State's additional allegation that Mr. Gengler's murder was committed during the course of a robbery.

By his first point of error, appellant claims that the State improperly subjected him to double jeopardy. Specifically, he asserts that there was no manifest necessity for the declaration of mistrial in the second trial.

Both the U.S. Const. amend. V and the Tex. Const. art. I § 14, bar the Government and the State, respectively, from subjecting any person "for the same offense to be *twice* put in jeopardy of life or limb." Thus "an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393, 95 S.Ct. 1055, 1065, 43 L.Ed.2d 265 (1975), *quoted in, Ex parte McAfee*, 761 S.W.2d 771, 772–73 (Tex.Crim.App.1988). A trial court's declaration of mistrial following a hung jury is not an event that terminates the original jeopardy to which a defendant is subjected. *Richardson v. United States*, 468 U.S. 317, 326, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984). In a landmark case, the United States Supreme Court held that when jurors are unable to reach a verdict and the trial court is of the opinion that there is *manifest necessity* for dis-

charging the jury and declaring a mistrial, such action is not a bar to further proceedings, and the accused is not exempt from being put to trial again. *United States v. Perez*, 22 U.S. [9 Wheat] 579, 6 L.Ed. 165 (1824). Thus, the trial court at appellant's second trial must have had manifest necessity to declare a mistrial[1] for jeopardy to continue and allow a third trial for the same offense.

Tex.Code Crim.Proc.Ann. art. 36.31 (Vernon 1981) provides:

> After the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to its discharge; *or* the court may *in its discretion* discharge it where it has been kept together for such time as to render it altogether improbable that it can agree (emphasis ours).

Whether the trial court properly exercised its discretion is determined by the amount of time the jury deliberates considered in light of the nature of the case and the evidence presented. *Patterson v. State*, 598 S.W.2d 265, 268 (Tex.Crim.App.1980). Generally, the length of time the jury deliberates rests in the sound discretion of the trial court, and absent an abuse of discretion, there is no error. *DeLuna v. State*, 711 S.W.2d 44, 48 (Tex.Crim.App.1986). When evaluating an alleged abuse of discretion, the trial court's communications with the jurors are particularly significant. *United States v. Gordy*, 526 F.2d 631, 636 (5th Cir.1976).

In the case before us, the appellant has presented us with the docket sheets for the first two trials and the testimony of Mr. Ron Baroso, appellant's counsel during those proceedings. The only evidence presented to us concerning the circumstances surrounding the declaration of mistrial during the second trial is the testimony of Mr. Baroso. He testified as follows:

Defense: Do you recall particularly during the second trial the circumstances surrounding the granting of the mistrial? In other words do you recall specifically whether either Counsel made a motion for it or how much time was consumed in the process of declaring the mistrial?

Mr. Baroso: Was this during the second trial?

Defense: Yes, sir.

Mr. Baroso: No, I'm sorry, the timeframes there I can't recall that.

However, Mr. Baroso did testify that the jury in the second trial deliberated for approximately eight hours before the trial court declared a mistrial. Appellant urges us to find an abuse of the trial court's discretion on the basis of this evidence alone. The record before us does not contain a statement of facts regarding the circumstances surrounding the declaration of mistrial. Further, appellant has failed to present a record reflecting the communications between the jury and the trial court. Even if we examine the docket sheet, it merely reflects that four notes were sent to the trial court by the jury during their deliberations and that their deliberations lasted approximately eight hours. We have nothing in the record before us reflecting either the content and nature of all four jury notes or the content and nature of the trial court's responses.

We decline to hold that declaration of a mistrial following eight hours of jury deliberation ipso facto constitutes an abuse of the trial court's discretion. *See Patterson*, 598 S.W.2d at 268 (where declaration of mistrial after jury deliberations for four hours did not constitute an abuse of discretion).

Through this same point of error, appellant asserts that the trial court erred by failing to allow the jury in the second trial to deliberate as long as the jury in the first trial. Appellant cites *Guerra v. State*, 690 S.W.2d 901 (Tex.App.—San Antonio 1985,

---

1. The record shows that the trial court sua sponte declared a mistrial and later granted the State's motion to dismiss the indictment. It does not matter for jeopardy purposes whether the trial court characterizes its termination of the trial as a declaration of mistrial or dismissal of the indictment. *Durrough v. State*, 620 S.W.2d 134, 137 (Tex.Crim.App.1981). We find it unnecessary to distinguish between these two events and will refer to the trial court's declaration of mistrial alone.

no pet.) in support of his contention. After a careful reading of *Guerra*, we cannot find any language that could be interpreted as imposing such a requirement on a trial court. Appellant has not cited to us any other authority in support of his position, and we decline to adopt such a mechanical rule.

■ Finally, through this same point of error, appellant contends that the trial court erred by failing to issue an *Allen* charge [2] to the second jury prior to declaring a mistrial. First, we are not convinced that an *Allen* charge was not given to the jury. The only evidence before us is the testimony of Mr. Baroso which follows:

> Defense: And do you have a specific recollection of whether an Allen charge is given at the second trial?
>
> Mr. Baroso: No, I don't.

It is clear that appellant would have us rely on the absence of an entry on the docket sheet to establish that an *Allen* charge was not presented to the jury. Assuming that the absence of an entry on the docket sheet is sufficient to show the absence of an *Allen* charge, we fail to see any error. Just as before, appellant has cited several cases in support of his contention,[3] and upon a careful reading, we cannot find any language in those cases which might be interpreted as imposing an affirmative duty on the trial court to issue an *Allen* charge prior to declaring a mistrial. The cited authority holds that there was *no error* by the trial court in presenting the jury with an *Allen* charge. We are not aware of any requirement that a trial court must present the jury with an *Allen* charge, and we decline to adopt such a view. The United States Supreme Court expressed the appropriate standard in *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973): "The propriety of declaring a mistrial in the varying and often unique situation arising during the course of a criminal trial is not judged by the application of any me-

chanical formula; rather, the trial judge exercises a broad discretion in such circumstances." Appellant's first point of error is overruled.

■ By point of error two, appellant asserts that jeopardy should have attached at his first trial because the State withheld exculpatory evidence from the defense. During the first trial, appellant was unaware that Mrs. Gengler had received a newspaper clipping, prior to identifying appellant at the photographic array, containing appellant's photograph and identifying him as a suspect in her husband's murder. Appellant claims that Mrs. Gengler's receipt of this news article tainted her identification of the appellant, that it had the potential of being very suggestive. Appellant further claims that disclosure of this information could have had a substantial impact upon the outcome of the first trial, that the State's action constituted bad faith suppression of material evidence calculated to effect the outcome of the first trial, and that Mrs. Gengler's failure to contact the authorities upon receipt constitutes a failure to identify the appellant.

The suppression of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963); *Means v. State*, 429 S.W.2d 490, 495 (Tex.Crim.App.1968). However, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in this sense. *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399–2400, 49 L.Ed.2d 342 (1976); *Stone v. State*, 583 S.W.2d 410, 415 (Tex.Crim.App.1979). Error is committed only if the omitted evidence creates a reasonable doubt that did not otherwise exist and is of sufficient sig-

---

**2.** From *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), sometimes referred to as a "dynamite charge."

**3.** *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *United States v. Garcia,* 732 F.2d 1221 (5th Cir.1984); *Armstead v. State,* 677 S.W.2d 266 (Tex.App.—El Paso 1984), *pet. ref'd,* 692 S.W.2d 99 (Tex.Crim.App.1985).

nificance to result in the denial of a defendant's right to a fair trial. *Stone,* 583 S.W.2d at 415; *Green v. State,* 745 S.W.2d 477, 478–79 (Tex.App.—Corpus Christi 1988, pet. ref'd).

Mrs. Gengler's viewing of the newspaper article prior to the photographic lineup, while it might have helped the defense, did not constitute material evidence creating a reasonable doubt that did not otherwise exist. *See Stone,* 583 S.W.2d at 415. This is not exculpatory evidence. Furthermore, with respect to appellant's assertion that Mrs. Gengler's failure to contact the police upon receipt of the news article amounts to a failure to identify the appellant, we are not so convinced. First, Mrs. Gengler testified that she saw no need to contact the police because the news article stated that the Corpus Christi police were looking for the appellant; her failure to contact the police does not necessarily mean that she failed to identify the appellant. Second, even if we were to accept appellant's theory, a witness' prior hesitancy or failure to identify a defendant is not exculpatory evidence subject to the *Brady* rule. *Holloway v. State,* 691 S.W.2d 608, 616 (Tex. Crim.App.1984). Point two is overruled.

■ By his third point of error, appellant claims that the State acted vindictively by filing a capital murder charge after two prior mistrials on a murder charge. Appellant contends that this Court should apply a presumption of vindictiveness on the part of the State because a more serious charge was brought without any showing that intervening circumstances created a fact situation which did not exist during the original indictments.

If the State increases the charge against a defendant after he has successfully appealed his conviction, the increased charge is barred on due process grounds. *Blackledge v. Perry,* 417 U.S. 21, 28–29, 94 S.Ct. 2098, 2102–2103, 40 L.Ed.2d 628 (1974). Such a result is necessary even in the absence of evidence that the prosecutor acted in bad faith or maliciously because it is the appearance of vindictiveness which chills the right to appeal. *Blackledge,* 417 U.S. at 29, 94 S.Ct. at 2103. There is a presumption of vindictiveness when a prosecutor brings a more serious charge *following the defendant's exercise of a procedural right* (emphasis ours). *Blackledge,* 417 U.S. at 29–30, 94 S.Ct. at 2103–2104; *North Carolina v. Pearce,* 395 U.S. 711, 723–724, 89 S.Ct. 2072, 2079–2080, 23 L.Ed.2d 656 (1969). Appellant contends that because he asserted his right to a jury trial and because he failed to plead guilty at the two prior trials, a presumption of vindictiveness should apply to the prosecutor's filing of the more serious charge at the third trial.

The distinction between a bench trial and a jury trial does not compel a special presumption of prosecutorial vindictiveness whenever additional charges are brought after a jury is demanded. *United States v. Goodwin,* 457 U.S. 368, 383, 102 S.Ct. 2485, 2493–2494, 73 L.Ed.2d 74 (1982). Likewise, the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging instrument are unwarranted. *Goodwin,* 457 U.S. at 383, 102 S.Ct. at 2493–2494. It is clear that appellant's desire for a jury trial as well as his failure to plead guilty at the two prior trials provide an insufficient basis on which this Court will presume prosecutorial vindictiveness.

The rationale of *Pearce* and *Blackledge* does not apply if the defendant never exercises a statutory or constitutional right to review by a higher court. *Castleberry v. State,* 704 S.W.2d 21, 24 (Tex.Crim.App. 1984). Appellant ignores this crucial fact; he made no move for which the State's decision to file the increased charge can be seen as exacting retribution. *United States v. Ruppel,* 724 F.2d 507, 508 (5th Cir.1984).[4] The first two trials mistried not because of any action taken by the appellant but because the jury was simply unable to reach a verdict. *Ruppel,* 724 F.2d at 508. Appellant never exercised a proce-

---

4. *United States v. Ruppel,* 666 F.2d 261 (5th Cir.1982), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982), affirmed the con- viction on direct appeal. This 1984 decision is the result of a collateral attack.

dural right; he did not successfully appeal nor did *he* move for a mistrial on the basis of a hung jury in either of the two prior trials.[5] In short, the capital murder charge did not follow the appellant's exercise of a procedural right, and absent the presumption of prosecutorial vindictiveness, appellant has failed to show a violation of his due process rights. We overrule point of error three.

■ Through his fourth point of error, appellant asserts that the trial court erred in overruling his motion to suppress Mrs. Gengler's testimony in which she identifies the appellant as the man who murdered her husband. Specifically, appellant claims that the out-of-court photographic array in which Mrs. Gengler identified his photograph was impermissibly suggestive because she had previously viewed the news article containing his photograph and that this procedure gave rise to a substantial likelihood of misidentification.

Photographic identification of an accused prior to trial does not automatically taint an in-court identification. *Ward v. State*, 474 S.W.2d 471, 475 (Tex.Crim.App.1972). Unless it is shown by clear and convincing evidence that the complaining witness' identification was irreparably tainted, we will not reverse a conviction on these grounds. *Herrera v. State*, 682 S.W.2d 313, 318 (Tex.Crim.App.1984). It is well established that, even where the pre-trial identification procedure is impermissibly suggestive, the in-court testimony of an identification witness will still be admissible as long as the record clearly reveals that the witness' prior observation of the accused was sufficient to serve as an independent origin for the in-court identification. *Jackson v. State*, 657 S.W.2d 123, 130 (Tex.Crim.App.1983).

If the State relied on Mrs. Gengler's in-court identification of the appellant, we need not address the propriety of the photographic array following Mrs. Gengler's receipt of the news article. *Nash v. State*, 486 S.W.2d 561, 563 (Tex.Crim.App.1972).

Where the trial court holds a hearing outside the jury's presence to determine the source of the witness' in-court identification and the record is replete with demonstrations that the witness bases the in-court identification upon sources other than the allegedly impermissible photographic identification, any potential error is harmless. *See Medina v. State*, 743 S.W.2d 950, 957 (Tex.App.—Forth Worth 1988, pet. ref'd); *see also White v. State*, 625 S.W.2d 835, 837 (Tex.App.—Houston [14th Dist.] 1981, no pet.).

After identifying the appellant at trial, Mrs. Gengler testified as follows:

State: In identifying this man, and that is the man designated here as the Defendant, as the man who shot your husband—who shot your husband, are you identifying him from either the photo that your brother sent you, the photos that Mr. Montelongo [the police] showed you or from what you saw in the motel room June 15th?

Mrs. Gengler: I am identifying him from what I saw in the motel room because I will never forget that face.

Mrs. Gengler testified that before her husband and his murderer entered the motel room, she had turned on the light and put on her eyeglasses. She testified that her vision was good; the light illuminated the entire room. She testified that the murderer was approximately 80 inches "plus a few inches" away from her, that she saw his face when he came in the room, that she saw his face when he left the room, and that she watched him for five to seven seconds. She testified that she recognized the appellant immediately upon seeing the news article and knew he was the same person who shot and killed her husband. She testified that she identified the appellant, during the photographic array, from her memory of the murder scene, not from her recollection of the news article.

We find that this evidence is sufficient to show that Mrs. Gengler based her in-court identification upon sources other than the

---

**5.** We find it unnecessary to base our decision on *Raetzsch v. State*, 709 S.W.2d 39 (Tex.App.—Corpus Christi 1986), *pet. ref'd*, 733 S.W.2d 224 (Tex.Crim.App.1987), because in *Raetzsch* the trial court declared a mistrial on the defendant's motion.

news article and the photographic array, so our consideration of any potential error of the out-of-court identification is unnecessary.

Finally, appellant asserts that the time between the murder and the photographic array was substantial and that this fact creates a substantial likelihood of mistaken identification. We do not believe that two and one-half months between Mrs. Gengler's observance of the fatal shooting of her husband and the photographic array is such a long period of time for her memory to have faded. *See Durrough v. State*, 672 S.W.2d 860, 868 (Tex.App.—Corpus Christi 1984), *remanded on other grounds*, 693 S.W.2d 404 (Tex.Crim.App.1985) (where four months did not create a substantial likelihood of misidentification).

■ By his fifth point of error, appellant complains that the trial court erred in admitting the testimony of Mr. Kevin Hill concerning a telephone conversation Mr. Hill had with appellant whereby appellant allegedly admitted to the commission of Mr. Gengler's murder. More specifically, appellant contends that Mr. Hill's testimony was inadmissible hearsay, unreliable, not corroborated by circumstances indicating trustworthiness, and evidence of an extraneous offense.

First, with respect to appellant's claim of inadmissible hearsay, an oral admission against interest or an oral confession of guilt, which does not stem from custodial interrogation, and is given freely, voluntarily and without compulsion or persuasion, is admissible evidence against the accused. *Shiflet v. State*, 732 S.W.2d 622, 623 (Tex. Crim.App.1985). An admission by an accused to a third party is not hearsay and is clearly admissible; the only possible prohibition to be considered against admitting this statement is the Texas confession statute, Tex.Crim.Proc.Code Ann. art. 38.22, which is not applicable to a volunteered statement. *Sinast v. State*, 688 S.W.2d 631, 633 (Tex.App.—Corpus Christi 1985), *pet. ref'd*, 698 S.W.2d 153 (Tex.Crim.App. 1985). The facts before us clearly indicate that appellant telephoned Mr. Hill voluntarily, and the ensuing conversation cannot be considered custodial interrogation as Mr. Hill, an acquaintance of appellant, was not a police officer or an agent of the State.

■ Second, appellant claims that Mr. Hill's testimony was unreliable and should not have been allowed because Mr. Hill could not be sure that he was speaking to appellant. Identification of a voice through mechanical or electronic transmission by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker conforms to the requirement of authentication or identification as a condition precedent to admissibility. Tex.R.Crim.Evid. 901(b)(5) (Vernon 1989). Mr. Hill testified that he had previously talked to appellant in person, that the caller identified himself as appellant, and that he believed that he was talking to appellant. We find that this testimony sufficiently complies with Rule 901(b)(5).

■ Next, appellant claims that Mr. Hill's testimony should not have been admitted because it was not corroborated. We are not aware of any requirement of corroboration where the testimony is not offered by an *accomplice*, and appellant has failed to cite us any authority for such a proposition. *Cf. Reed v. State*, 744 S.W.2d 112 (Tex.Crim.App.1988) (where the Court of Criminal Appeals discusses the test for the sufficiency of evidence corroborating an *accomplice's* testimony).

■ Finally, appellant asserts that Mr. Hill's testimony regarding appellant's alleged admission constitutes evidence of an extraneous offense, and as such, should not have been admitted. Mr. Hill's testimony regarding the details of appellant's alleged admission follows:

State: Do you recall him giving you any details of how this shooting had occurred?

Mr. Hill: Yes.

State: Could you tell us what details he gave you?

Mr. Hill: He said that he had went to the room and the man was fixing to close the door and he walked on in the room, you know, and the man started shout-

ing at him to get out of the room and there was an old woman in the room and she said just calm down and give him everything he wants, you know, and the man reached out and grabbed the gun from him and put it up to his head and pulled back the hammer and Woodson [appellant] ducked and then the gun went off and he came up and hit the man and the man dropped the gun. He picked it up and shot him and ran.

State: Shot him and ran?

Mr. Hill: Yes.

State: Do you recall him mentioning anything that he might have left or lost during that robbery and shooting?

Mr. Hill: A baseball cap.

Mr. Hill testified that the telephone conversation occurred between June 16th and June 18th of 1983. Mr. Hill also testified that the caller told him that the crime took place in a motel in *Eagle Pass*, Texas. The issue before us is whether that fact is sufficient to warrant a finding that, as a matter of law, Mr. Hill's testimony constitutes evidence of an extraneous offense, i.e., an offense other than Mr. Gengler's murder in *Corpus Christi*, Texas. We do not believe that Mr. Hill's testimony is necessarily evidence of an extraneous offense, particularly in light of the fact that the State presented the uncontradicted testimony of an Eagle Pass police detective that there were no reported murders, shootings, or robberies in an Eagle Pass motel during 1983. We find that the trial court did not err in allowing the jury to determine the similarity between the events described to Mr. Hill and the details of Mr. Gengler's murder. Point five is overruled.

The judgment of the trial court is AFFIRMED.